lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PETER IRELAND, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Case No. 07-4082-JAR |
| | ) |
| ROBERT L. DODSON, SR., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' Motion for Judgment Notwithstanding the

Verdict [sic] (Doc. 138) and Motion for New Trial (Doc. 140) as well as plaintiffs' Motion for

Costs, Attorneys Fees and Pre-Judgment Interest (Doc. 146). For the reasons explained in detail

below, the Court grants in part and denies in part the parties' motions.

## I.    Background

This case has a long and contentious history.[1]  Plaintiffs Peter Ireland, Flightlog Pty Ltd.,

and Coda Superannuation Fund, ATF, sued defendants Robert L. Dodson, Sr. ("Dodson, Sr."),

Dodson International, Dodson International Parts SA, Dodson's Services, Inc. d/b/a Dodson

Services, Inc. ("Dodson Services, Inc."), Dodson Aviation, Inc., Dodson Aviation Services, and

Nion, LLC in the District Court of Franklin County, Kansas relating to the sale of aircraft and

related parts.  In their Petition to Recover Down Payments or Enforce Agreement for Purchase of

---

[1]Indeed, plaintiffs recently filed a Motion for Reconsideration of this Court's Order of Partial Summary Judgment with respect to Dodson International Parts, Inc. (Doc. 167), based on new evidence with relating to the alter ego allegations allegedly discovered in yet another lawsuit between the parties filed in state court.  The Court will address that motion in a separate order.

Aircraft and Other Relief, plaintiffs contended that defendants breached an agreement to sell certain aircraft and radios.  Plaintiffs asserted several claims, including fraud, constructive fraud, conversion, breach of contract, breach of warranty, breach of covenant of good faith and fair dealing, and requested injunctive relief.  Defendants removed the case to this Court and, after the parties reached an agreement on jurisdiction, the Court conducted a preliminary injunction hearing, which it ultimately denied and dissolved the Temporary Restraining Order ("TRO") entered in state court.[2]  Plaintiffs' motion to find defendants in contempt for violating the TRO was denied.[3]

Defendants moved for dismissal and partial summary judgment.  The Court denied the motion to dismiss with respect to plaintiffs' breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing claims against Nion, LLC, and granted the motion with respect to all of plaintiffs' claims against the remaining moving defendants, Dodson International, Dodson Aviation, Inc., Dodson International Parts, Inc., Dodson Aviation Services, and Dodson International Parts, SA.[4]  The Court granted Dodson, Sr. and Dodson Services, Inc.'s Motion for Partial Summary Judgment with respect to plaintiffs' constructive fraud claim and denied the motion with respect to plaintiffs' fraud claim and corporate veil/alter ego claim, as well as plaintiffs' claims for consequential damages.[5]  Plaintiffs' motion to amend the complaint to add punitive damages was also denied; when plaintiffs moved to reconsider,

---

[2](Doc. 52.)

[3](Doc. 92.)

[4](Doc. 110.)

[5]*Id.*

defendants moved for sanctions.[6]

Defendants did not move for summary judgment with respect to the breach of contract, breach of good faith and fair dealing or unjust enrichment claims with respect to Dodson Services, Inc. and Dodson, Sr., and the parties proceeded to trial on those claims, as well as for fraud and corporate veil/alter ego with respect to Dodson, Sr.[7] As the case proceeded, the parties' claims continued to evolve. At the *in limine* hearing, plaintiffs agreed there was an enforceable contract, and dropped the request for the Statute of Frauds instruction. At that conference, defendants dropped their Statute of Frauds affirmative defense and the Court granted their motion to dismiss their counterclaim relating to several other aircraft, and clarified their remaining counterclaim with respect to the Boeing 727, not the two Cessnas.

Defendants moved for judgment pursuant to Fed. R. Civ. P. 50(a) at the close of plaintiffs' evidence and renewed the motion at the close of all evidence.[8] The Court took the motions under advisement. At the jury instruction conference, plaintiffs dropped their claim for lost profits, and defendants objected to the claim for interest on a loan secured by Ireland to purchase the Boeing 727 on the ground that it was not previously disclosed or included in the Pretrial Order. Defendants also reiterated issues raised in the Rule 50(a) motion with respect to the alter ego claim and the agency breach of contract claim against Nion, LLC. Finally, plaintiffs originally stated the claim for breach of contract and unjust enrichment in the alternative and the parties both submitted proposed instructions stating the claims in the

---

[6](Docs. 104, 133.)

[7](Doc. 110.)

[8](Docs. 129, 130.)

alternative, *i.e*, if the jury found there was no contract, then the jury was to consider the unjust enrichment claim. At the instruction conference, the parties agreed on instructions and verdict interrogatories to that effect. The next morning, however, prior to instructing the jury and closing arguments, counsel for defendants requested the prefatory language to the unjust enrichment question in the instructions and verdict form be eliminated, thus setting the stage for the jury to enter a verdict in favor of plaintiffs on both claims for breach of contract and unjust enrichment.[9]

Subsequently, the jury returned a verdict in favor of plaintiffs on the breach of contract claim against Dodson Services, Inc. relating to the Boeing 727 aircraft, and awarded damages in the amount of $300,000 for funds paid and $62,000 interest on the loan obtained to purchase that aircraft;[10] the breach of contract claim against Dodson Services, Inc. with respect to the purchase and installation of radio equipment, and awarded damages in the amount of $21,500; and the breach of contract claim against Dodson Services, Inc. and Nion, LLC relating to the Cessna 172 and 310 aircraft, and awarded damages in the amount of $100,000.[11] The jury also ruled in favor of plaintiffs on the breach of good faith and fair dealing claim, awarding damages of $300,000 in funds paid and interest of $62,000.[12] The jury found that Dodson, Sr. should be held personally liable for the obligations of Dodson Services, Inc. on the breach of contract and good faith and fair dealing claims.[13] Finally, the jury found in favor of plaintiffs on the unjust enrichment claim

---

[9]Doc. 134, Instruction No. 31; Doc. 136, Verdict Form.

[10](Doc. 146.)

[11]*Id.*

[12]*Id.*

[13]*Id.*

4

against Dodson Services, Inc., and awarded damages in the amount of $300,000 for funds paid

for the Boeing 727, $100,000 for the funds paid for the Cessna aircraft, and $21,500 for funds

paid for the radio equipment and installation.[14]  The jury ruled in favor of Dodson Services, Inc.

and Dodson, Sr. on plaintiffs' fraud claims.[15]  After the verdict was read, the Court orally denied

defendants' Rule 50(a) motions.

On May 12, 2009, Judgment was entered in favor of plaintiffs as follows:  against

defendants Dodson Sr. and Dodson Services, Inc.: (1) for breach of contract regarding the

Boeing 727 aircraft; (2) for breach of contract regarding purchase and installation of radio

equipment; (3) for breach of the duty of good faith and fair dealing; and (4) for unjust

enrichment; and against defendants Dodson Sr., Dodson Services, Inc. and Nion, LLC; and (5)

for breach of contract regarding the Cessna aircraft. Judgment was entered against defendants

Dodson Sr. and Dodson Services, Inc. in the amount of $483,500.00, as follows: $300,000.00 for

funds paid for the Boeing 727, $62,000.00 for interest on the funds used to pay for the Boeing

727, $21,500.00 for funds paid for the purchase and installation of radio equipment, and

$100,000.00 for funds paid for the Cessna aircraft.  Judgment was entered against defendant

Nion, LLC in the amount of $100,000.00 for funds paid for the Cessna aircraft.[16]

Defendants timely renewed their motion for judgment as a matter of law as well as for a

new trial.  They also filed a motion for supersedeas bond to stay enforcement of the judgment

pending a ruling on the post-trial motions, which the Court granted despite prolonged and

---

[14]*Id.*

[15]*Id.*

[16](Doc. 137.)

numerous objections by plaintiffs.[17]

## II.    Renewed Motion for Judgment as a Matter of Law

Defendants renew their motion for judgment as a matter of law under Rule 50(b) with regard to all claims for which the jury found liability. "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[18] "The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party."[19] In order for a jury to properly find for a party, "more than a scintilla of evidence" must be presented to support a claim.[20] The Court must consider the evidence admitted at trial, construing it and the inferences from it in the light most favorable to the non-moving party.[21] The Court may not make credibility determinations or weigh the evidence.[22] "The jury has the exclusive function of appraising the credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[23]

### A.    Dodson Services, Inc.

---

[17](Doc. 163.)

[18]*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000).

[19]*Univ. of Kan. v. Sinks*, 644 F. Supp. 2d 1287, 1293 (D. Kan. 2008) (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007)).

[20]*Id.* (citing *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003)).

[21]*Tyler*, 232 F.3d at 812 (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

[22]*Id.*

[23]*See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotations and citation omitted).

The elements for a breach of contract claim under Kansas law are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff suffered damage caused by the breach.[24] "[I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term of the contract 'which the defendant allegedly violated by failure to abide by the good faith spirit of that term.'"[25] "The duty of good faith assumes the existence of a contractual right; it does not create one."[26] "This implied duty requires the parties to an agreement to refrain from 'intentionally and purposefully do[ing] anything to prevent the other party from carrying out his part of the agreement, or do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"[27]

### 1.      Breach of Contract

There are three contracts at issue in this case: for sale of the Boeing 727, for sale and installation of the radio equipment and for sale of the two Cessna aircraft. Plaintiffs claimed that defendant Dodson Services, Inc. breached all three contracts. In turn, defendants counterclaimed for breach of contract on the Boeing 727. Although there was no written contract between the parties, neither party argues there was no enforceable contract. Instead, defendant Dodson

---

[24]*See, e.g.*, *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

[25]*Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1201 (D. Kan. 2004) (quoting *Britvic*, 265 F. Supp. 2d at 1188 (citations omitted)).

[26]*Id.* (quoting *Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co.*, 810 F. Supp. 1196, 1204 (D. Kan. 1992) (citation omitted)).

[27]*Id.* (quoting *Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 (D. Kan. 1999) (citation omitted)).

Services, Inc. argues that plaintiffs failed to establish that Dodson Services, Inc. breached the contract on the Boeing 727 and plaintiffs were damaged thereby.[28]  Dodson Services, Inc. argues that the evidence presented at trial demonstrated that plaintiffs attempted to walk away from the contracts before there was any breach by Dodson Services, Inc.  Defendant also argues that Dodson, Sr. and Ray Ekinci expressly indicated that the Boeing 727 was being sold in an "as is" condition.  Finally, defendants argue that the evidence showed that plaintiffs knew that they, not Dodson Services, Inc., were responsible for ensuring the necessary airworthiness requirements were met.

In 2007, Peter Ireland and Bob Dodson discussed the sale of two Boeing 727 aircraft for a total price of $1.5 million.  As stipulated by the parties, in February and March 2007, plaintiffs wire-transferred a total of $421,500.00 to Dodson Services, Inc. as follows: $300,000.00 in association with the purchase of two Boeing 727 aircraft, $100,000.00 in association with the purchase of two Cessna aircraft, and $21,500.00 in association with the purchase and installation of an Enhanced Ground Proximity Warning System ("radio equipment").[29]  The parties further stipulated that no written contract was signed by the parties with regard to any of the aforementioned transactions, no refund of money was ever made by Dodson Services, Inc. and plaintiffs never had possession of any of the aircraft.[30]  The agreement was later modified, for the sale and purchase of only one Boeing 727.

The unsigned draft Sales Agreement contained a provision for "Certificate of Airworthiness," which stated that the aircraft shall be delivered with a Certificate of

---

[28]Defendant does not argue sufficiency of the evidence with respect to the radio and Cessna contracts.

[29]Doc. 134, Instruction No. 3.

[30]*Id.*

8

Airworthiness "with all the mandatory Service Bulletins and Airworthiness Directives embodied, as required by the manufacturer and the Federal Aviation Authority up to the date of delivery." The Sales Agreement also provided that Ireland was entitled to a pre-delivery inspection of the aircraft, with the option of cancelling the Sales Agreement and obtaining a refund of any monies paid if the inspection reveals "material defects" in either the aircraft or documentation. The Sales Agreement further provided that, other than the warranties in the agreement, the aircraft is sold "as is."

The evidence at trial centered around whether the deposit on the Boeing 727 was non-refundable and a dispute as to what quality of Boeing 727 was promised. Ireland testified that the Boeing 727 was not airworthy, or "in compliance," as represented, that he gave notice of withdrawal from the sale and requested a full refund of the $321,500 paid toward the Boeing 727 and radio equipment. Ireland further testified that he requested Dodson Services, Inc. either provide the Cessna aircraft or refund the $100,000. A partial refund was offered, but not accepted by Ireland. Dodson, Sr. and Ray Ekinci testified that it was plaintiffs who breached the contract for sale of the Boeing 727, and that no refund was issued as that plane was only promised in an "as is" condition, that the deposited funds were non-refundable, that Dodson Services, Inc. stood ready to deliver the Cessnas, and that an offset for expenses incurred should be allowed in the form of payment for the Cessnas and radio equipment.

Because there was no written contract, the jury's verdict with respect to plaintiffs' breach of contract claim and defendants' counterclaim turned on whether they believed Ireland or Dodson, Sr. and Ekinci, and their respective version of the agreement and events that transpired. As the verdict attests, the jury sided with Ireland. The Court may not make credibility

determinations or weigh the evidence.[31]   The Court has considered the evidence admitted at trial, and construing it and the inferences from it in the light most favorable to the non-moving party, finds no basis to grant judgment as a matter of law on the breach of contract claim against Dodson Services, Inc.[32]

### 2.      *Breach of Duty of Good Faith and Fair Dealing*

Plaintiffs claimed that Dodson Services, Inc. breached the duty of good faith and fair dealing by failing to provide the logbooks, manuals and maintenance records for the Boeing 727. Ireland testified that he was never provided the aircraft records for the 727 aircraft, despite several attempts to obtain them.  Ireland was told that the documents were in Ottawa, then later that they were in South Africa, where the 727 was located.  In April 2007, Ireland contacted Lee Thompson, an engineer in South Africa, and asked him to find and compile a list of documents for the 727, and to verify the status of the aircraft.  Ireland testified that Thompson's research confirmed "serious deficiencies" in the airworthiness of the engines and the airframe, and indicated that some of the documents regarding the No. 3 engine were missing.  Defendant contends that Ireland conceded at trial that his representatives were provided the records by late April 2007, when Ireland contends he first confirmed the status of the necessary engine corrosion inspections, and that there was no deadline for when these records were to be provided.

As the jury was instructed, parties shall not intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of

---

[31]*Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

[32]*Id.*

the contract.[33]  The evidence at trial was that Dodson Services, Inc. was not forthcoming with the records, preventing Ireland from inspecting the aircraft and determining whether there were any material defects warranting cancellation of the contract.  The jury could reasonably find that Dodson Services, Inc. violated this term of the contract by failing to abide by the good faith spirit of that term. Defendants' motion for judgment as a matter of law is denied on this claim.

### B.      Robert Dodson, Sr.

The jury was instructed on the alter ego issue with respect to Dodson, Sr. as follows:

> Plaintiffs claim that defendant Robert Dodson, Sr. is the alter ego of defendant Dodson Services, Inc.  This amounts to a claim that those parties should be treated as being one and the same entity or person under the law so that the separate corporate existence of Dodson Services, Inc. should be disregarded and defendant Robert Dodson, Sr. should be held personally liable for its obligations.  You are instructed that a corporation, generally, is a separate legal entity authorized under the law to do business in its own right and on its own credit as distinguished from the credit and assets of other persons or corporations.  The mere fact that one individual owns and controls the stock structure of a corporation does not mean that the corporation may be regarded as the alter ego of its stockholder.

> However, the existence of a corporate entity may be disregarded where it is proved that the corporation was created as a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of an individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.

> Where one is the principal stockholder of a corporation and personally conducts its business and manages its assets, that person may be found individually liable for the corporate obligations if it is proved that he has consistently engaged in a course of conduct ignoring the existence of the corporate entity and has, in fact, conducted business as an individual by exercising such paramount and personal control over the operations of the corporation that its

---

[33]Doc. 134, Instruction No. 28.

> corporate existence has been disregarded and its business interests
> and the person's own personal interests cannot be reasonably
> separated.[34]

Defendants did not object to the form of the instruction, but rather, the basis for giving it, as raised in their Rule 50(a) motion.

Defendant Dodson, Sr. argues that because the jury did not find in favor of plaintiffs on the substantive fraud claims, there can be no personal liability against Dodson, Sr. on the breach of contract claims. The Court disagrees. Contrary to defendants' claim, plaintiffs' alter ego claim was not predicated on a finding in favor of plaintiffs on their substantive fraud claims. Instead, the jury could disregard the corporate entity if the evidence showed that its purpose was to accomplish some fraud or illegal purpose. This Court denied Dodson Sr.'s motion for partial summary judgment on the corporate veil/alter ego issue, finding that there was a disputed issue of fact with respect to whether Dodson, Sr. used Dodson Services, Inc. "to promote his alleged misconduct in deceiving Ireland into paying $100,000 for the two Cessnas."[35] While it is accurate to state that plaintiffs' alter ego claim against Dodson, Sr. survived summary judgment because of plaintiffs' allegations of fraud within the context of the alter ego issue, it is not accurate to extrapolate that at trial, the only basis for allowing plaintiffs' corporate veil claim to go to the jury was that such liability could be predicated upon a finding of substantive fraud. The substantive fraud claims were subject to a clear and convincing standard, rather than a preponderance of the evidence standard, and centered on the alleged misrepresentations regarding the Boeing 727. Therefore, it does not follow that the jury "expressly rejected Plaintiffs' contention that there was any misconduct" by Dodson, Sr. and Dodson Services, Inc.

---

[34]Doc. 134, Instruction No. 24.

[35](Doc. 110 at 29-30.)

12

in the context of the alter ego claim. Instead, it can be fairly read into the jury's verdict that it did not find that the elements of fraud were proven by a clear and convincing evidence standard, but did find that Dodson Services, Inc. "was created as a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of an individual owning all or most of its stock," or that Dodson, Sr. "consistently engaged in a course of conduct ignoring the existence of the corporate entity," as explained in Instruction No. 24.

Thus, the Court turns to whether the weight of the evidence supports that verdict. Defendants argue that none of the factors considered by Kansas courts when determining whether to disregard the corporate entity were demonstrated by the evidence. Those factors are:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.[36]

Although these factors are significant, they are neither exclusive nor mandatory. "Each case involving disregard of the corporate entity must rest upon its special facts."[37] Kansas courts have held that "[i]njustice alone will support a disregard of the corporate entity."[38] The corporate veil can also be disregarded when it is used as a cloak or cover for fraud or illegality, or if necessary

---

[36]*Kvassay v. Murray*, 808 P.2d 896, 904 (Kan. Ct. App. 1991) (quoting *Sampson v. Hunt*, 665 P.2d 743, 751 (Kan. 1983)).

[37]*Sampson*, 665 P.2d at 751.

[38]*Kvassy*, 808 P.2d at 906.

to achieve equity.[39]

Defendants are correct that plaintiffs presented no evidence on the first six factors. Instead, plaintiffs contended that Dodson, Sr. used Dodson Services, Inc. to promote his alleged misconduct in deceiving Ireland into paying $100,000 for the two Cessnas, when Dodson, Jr. never gave his father authority to bind the Cessna sellers. Plaintiffs focus in particular on Dodson, Sr.'s application of the $100,000 to the amount owed on the 727-100, without Dodson, Jr.'s knowledge or Ireland's permission. Plaintiffs also point to evidence at trial regarding the Dodsons' "loose" brokerage arrangements, such that there was no need for anything in writing between the companies they each purported to separately represent. The Dodsons had an informal routine for establishing an agency relationship with one another to sell aircraft, which usually amounted to a telephone call. Dodson, Sr. and Dodson, Jr. not only purported to sell aircraft on behalf of corporations, but also routinely granted one another authority to sell aircraft as an agent for a commission on behalf of each one's own given principal corporation. Neither the aircraft sale agency agreements nor the commissions between the Dodsons were ever reduced to writing, except for an entry on their respective books, which ranged from "expenses only" to a percentage of the purchase price.

Plaintiffs fail to explain how evidence of the Dodsons' brokerage agreement justifies disregarding the existence of Dodson Services, Inc. as a corporate entity. While the evidence at trial may indicate that Dodson Services, Inc. and Dodson Jr.'s businesses were the alter egos of each other, that was not the issue before the jury. Moreover, plaintiffs cite no evidence at trial to justify holding Dodson, Sr. liable for any judgment rendered against Dodson Services, Inc. in

---

[39]*United States v. M.P.M. Contractors, Inc.*, 763 F. Supp. 488, 495 (D. Kan. 1991).

favor of plaintiffs. As previously discussed, in order to pierce the corporate veil, a plaintiff must show that allowing the separateness of the corporate structures to stand would work a fraud or injustice on the plaintiff.[40] Plaintiffs fail to show that permitting Dodson Services, Inc. to maintain its separate corporate structures will result in injustice. There is no evidence that plaintiffs believed they were contracting with Dodson, Sr. rather than Dodson Services, Inc. or that they will suffer injustice unless Dodson, Sr. is held responsible for Dodson Services, Inc.'s actions. Dodson Services, Inc. does not claim that Dodson, Sr. bears any responsibility for the breach of contract. Nor is there evidence of any fraud perpetrated on plaintiffs by Dodson, Sr. Plaintiffs make much of Dodson, Sr.'s offering the Cessnas for sale when they were actually owned by Nion and IAL, and his subsequent failure to return and application of the $100,000 to the amount owed on the 727-100, without Dodson, Jr.'s knowledge as evidence of fraud, but do not articulate how this is evidence of fraud with respect to the creation and existence of Dodson Services, Inc. There is no evidence that Dodson Services, Inc., through Dodson, Sr. lacked authority to offer the Cessnas for sale. Nor is there evidence that, by engaging in the "loose" brokerage arrangement with his son, Dodson, Sr. "consistently engaged in a course of conduct ignoring the existence of the corporate entity."[41] Finally, there was no evidence at trial that Dodson Services, Inc. will be incapable of paying any judgment rendered against it in this action—indeed, it is uncontroverted that the sums paid by plaintiffs to Dodson Services, Inc. have not been transferred to any other entity or person. Accordingly, based on the lack evidence and reasonable inferences at trial, the Court finds that defendant Dodson, Sr. is entitled to

---

[40]*See HealthOne, Inc. v. Columbia Wesley Med. Ctr.*, 93 F. Supp. 2d 1152 1164 (D. Kan. 2000) (citing cases).

[41]Doc. 134, Instruction No. 24.

judgment as a matter of law on the alter ego claim.

###### C.    Interest

Included in plaintiffs' claim for damages was an award of interest in the amount of $96,000 on the $300,000 paid to Dodson Services, Inc. for the Boeing 727 aircraft.  Plaintiff Ireland testified that he borrowed this amount from a bank in Australia, and interest had accrued at $4000 per month for twenty-four months, for a total of $96,000.  No evidence other than Ireland's testimony was introduced to support this claim for damages.  The jury awarded plaintiff $62,000 in interest.

Plaintiffs articulated this claim for damages for the first time at the jury instruction conference.  Defendants objected on the grounds that such damages were not included or specified in the Pretrial Order.[42]  By comparison, plaintiffs had made specific reference in the Pretrial Order to consequential damages in the form of lost business opportunities and expenses for training to fly the Boeing 727.  The relevant paragraph provides:

> . . . Plaintiffs claim damages of at least $421,500 for funds paid; consequential damages for contractual business opportunities lost by Plaintiffs on [the Boeing 727] in the amount of $424,000 per month since April, 2007, and continuing; $12,000 for 727 training; together with interest costs, attorney fees, exchange rate losses; . . .[43]

At the instruction conference, plaintiffs argued that the general reference in the Pretrial Order stating, "together with interest, costs, attorney fees, exchange rate losses" was sufficient to state a claim for interest on the loan for funds used to purchase the Boeing 727.  Defendants argued that the interest claimed by Ireland was consequential damages, not statutory pre- or post-

---

[42](Doc. 77 at 25-26.)

[43]*Id*. at 26.

judgment interest, and as such, was waived by plaintiffs. Defendants renew this argument in the context of this Rule 50(b) motion.

The Court agrees with defendants that the interest on the loan obtained by Ireland to purchase the Boeing 727 constitutes consequential damages, rather than prejudgment interest. Prejudgment interest "compensates the injured party 'for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment.'"[44] By contrast, consequential damages "are limited to those damages which may fairly be considered as arising in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach."[45] The interest on the purported loan to purchase the Boeing 727 was a consequence of the alleged breach of contract, rather than compensation for deprivation of the value of the downpayment. There is no reference to bank interest charges stemming from Ireland's loan anywhere in the Pretrial Order; in contrast, there is specific reference in the Pretrial Order to consequential damages, both of which were objected to by defendants in their motion for partial summary judgment.[46] Plaintiffs offer no explanation for failing to specifically reference the interest stemming from the bank loan, other than to refer to the boilerplate language in the Pretrial Order, which they characterize as unlimited with respect to interest. The Court disagrees that the boilerplate language in the Pretrial Order referencing "interest" includes both pre-judgment interest and consequential interest on Ireland's purported bank loan. This conclusion is reinforced by plaintiffs' motion for

---

[44]*Swift-Eckrich, Inc. v. Advantage Sys., Inc.*, 55 F. Supp. 2d 1280, 1289 (D. Kan. 1999) (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988)).

[45]*MLK, Inc. v. Univ. of Kan.*, 940 P.2d 1158, 1164 (Kan. Ct. App. 1997) (citing *Kan. St. Bank v. Oversees Motorsport, Inc.*, 563 P.2d 414 (Kan. 1977)); *Vickers v. Wichita State Univ.*, 518 P.2d 512, 515 (Kan. 1974).

[46](Doc. 81.)

17

costs, attorneys fees and pre-judgment interest also pending before the Court, in which plaintiffs seek pre-judgment interest on the breach of contract damages, including the $300,000 payment for the Boeing 727.[47]  Because the Pretrial Order is the controlling document for trial, the Court finds that plaintiffs waived any claim to interest on Ireland's loan.[48]   Accordingly, defendants are entitled to judgment as a matter of law on this issue.

### D.      Nion, LLC

While Nion, LLC is the registered owner of one of the Cessna aircraft for which plaintiffs paid, it received none of the $100,000.00 transferred to Dodson Services, Inc.  Because Dodson, Sr. was brokering the sale of the Cessnas to plaintiffs, the jury was instructed as follows:

> An agent is a person who, by agreement with another called the principal, performs or is to perform services for the principal, with or without compensation.  The agreement may be written, oral, or implied by the behavior of the parties.

> The defendants are sued as principal and agent.  Defendant Nion, LLC is the principal and defendant Dodson Services, Inc., acting through Robert Dodson, Sr., is its agent.  If you find defendant Dodson Services, Inc. is liable for breach of contract with respect to the sale of the Cessna 172 aircraft, then you must find that defendant Nion, LLC is also liable.  However, if you find Dodson Services, Inc. Is not liable, then you must find that Nion, LLC is not liable.[49]

Defendants did not object to the form of these instructions, but rather, the basis for giving them, as raised in their Rule 50(a) motion.

---

[47](Doc. 146.)

[48]*Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002); Fed. R. Civ. P. 16(e).  The Court notes that this is not the only claim plaintiffs neglected to include in the Pretrial Order, having previously denied their motion to amend complaint after the Pretrial Order was entered to include a claim for punitive damages (Doc. 104).

[49]Doc. 134, Instruction Nos. 25, 26.

18

Defendants concede that Nion, LLC authorized defendant Dodson Services, Inc., through Dodson, Sr. to offer the Cessna 172 to plaintiffs in conjunction with the offering of the sale of the Cessna 310 to plaintiffs for $100,000. Nevertheless, defendants argue that Nion, LLC never agreed to sell either of the two Cessnas to plaintiffs nor accepted any of the $100,000 paid to Dodson Services, Inc. and thus, cannot be held liable for breach of contract for the sale of the Cessnas. This argument is both circular and contrary to Kansas law. The evidence at trial shows that Nion, LLC was a party to the contract to sell the Cessna aircraft by virtue of its brokerage arrangement with Dodson Services, Inc. acting through Dodson, Sr. The Kansas Supreme Court has concluded a broker generally acts as an agent for his principal.[50] Nion, LLC never claimed, nor did the evidence show, that Dodson, Sr. exceeded his authority in offering the Cessnas for sale.

The issue of the amount of damages awarded is more problematic. As defendants argued at the instruction conference, the evidence is undisputed that Nion, LLC owned the Cessna 172, and IAL, another corporation owned by Dodson, Jr., owned the Cessna 310. While the jury awarded damages in the amount of $100,000, there was no evidence of allocation of that amount between the two aircraft. Accordingly, defendant argues, Nion, LLC was found liable for more money than was at issue with respect to the Cessna 127. At the instruction conference, counsel for plaintiffs agreed with that assessment, and the Court stated that, to the extent the jury ended up awarding the entire $100,000 against Nion, LLC, it would be inclined to overturn that part of

---

[50]*Henderson v. Hassur*, 594 P.2d 650, 655 (Kan. 1979) ("As generally defined, a broker is an agent who, for a commission or brokerage fee, bargains or carries on negotiations in behalf of his principal as an intermediary between the latter and third persons in transacting business relative to the acquisition of contractual rights, or to the sale or purchase of any form of property, real or personal, the custody of which is not entrusted to him for the purpose of discharging his agency.") (quoting 12 AM. JUR. 2d, *Brokers* § 1, 772-73 (1964)).

the jury's verdict in its entirety.

Defendant Nion, LLC now moves for judgment as a matter of law on that basis. Alternatively, Nion, LLC requests the Court enter judgment reflecting that it is only liable for the amount of the $100,000 allocated to the Cessna 172, be it $50,000 or otherwise. Despite counsel's initial concession regarding the dilemma posed above, plaintiffs now urge that Nion, LLC is somehow estopped from raising the allocation issue and because it was never raised at trial, it has been waived. The Court disagrees. It is plaintiffs' burden to prove the amount of damages, including allocation between the two Cessnas owned by separate corporations.[51] Because the amount of damages allocated to Nion, LLC is speculative, judgment as a matter of law is granted on this claim.

### E.      Unjust Enrichment

The basic elements of a claim for quantum meruit, or unjust enrichment, are (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge of the benefit by the defendant, and (3) acceptance or retention of the benefit under circumstances that make it inequitable for the defendant to retain the benefit without payment of its value.[52] A quasi contract based on unjust enrichment is created on the basis of justice and equity, regardless of the assent of the parties, and is a legal device used to enforce noncontractual duties.[53] "A contract implied in fact arises from facts and circumstances showing mutual *intent* to contract."[54] The question of

---

[51]*Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003) (setting forth elements for breach of contract claim, including proof of damages).

[52]*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.,* 910 P.2d 839, 848 (Kan. 1996).

[53]*Security Ben. Life Ins. Corp. v. Fleming Cos. Inc.,* 908 P.2d 1315, 1323 (Kan. Ct. App. 1995), *rev. denied*, 259 Kan. 928 (1996).

[54]*Mai v. Youtsey,* 646 P.2d 475, 479 (Kan. 1982) (emphasis in original).

whether a party may recover damages based upon a theory of unjust enrichment is a question of law.[55]

Given the Court's ruling upholding the jury verdict with respect to the breach of contract claims, which necessitated a finding that there were enforceable contracts, there is no legally sufficient evidentiary basis with respect to a claim of unjust enrichment under the controlling law, and defendants are entitled to judgment as a matter of law on this claim.

In light of defendants' representations at trial, however, the Court finds that, in the event the breach of contract verdict is overturned on appeal, the unjust enrichment verdict should stand. As previously noted, plaintiffs originally stated the claim for breach of contract and unjust enrichment in the alternative. After the instruction conference and minutes before the Court was to instruct the jury, counsel for defendants requested the prefatory language to the unjust enrichment question in the verdict form be eliminated. Counsel's strategy in dropping the prefatory alternative language became apparent during closing argument, when he asked the jury to find that contracts existed, but were not breached, but then conceded that restitution would be proper for the radio equipment and the Cessnas, but not the Boeing 727. The Court is now faced with inconsistent verdicts on these alternative claims.

Despite counsel's directive to the jury at closing, defendants now argue that while the evidence at trial shows that Dodson Services, Inc. received monies from plaintiffs, such monies do not constitute either "goods" or "services" for which plaintiffs reasonably expected to be compensated. In order to require restitution, however, there must be a showing that the person sought to be charged had wrongfully secured a benefit or had passively received one which it

---

[55]*T.R., Inc. of Ashland v. Brandon,* 87 P.3d 331, 336 (Kan. Ct. App. 2004) (citation omitted).

would be unconscionable to retain.[56]  Thus, unjust enrichment would also apply to actions to recover monies paid.

## III.    Motion for New Trial

Defendants also move for a new trial under Fed. R. Civ. P. 59(a).  Their motion argues that a new trial is warranted because the judgment is contrary to the great weight of the evidence presented at trial with respect to the issues of (1) the personal liability of Dodson, Sr. under the theory of alter ego liability, (2) the liability of Nion, LLC with respect to the two Cessna aircraft, and (3) the liability of Dodson Services, Inc. under the theories of breach of contract, breach of good faith and fair dealing, and unjust enrichment.  "A new trial cannot be granted unless the error was prejudicial and affects the party's substantial rights."[57]  Motions for new trial are "not regarded with favor and should only be granted with great caution."[58]

"If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."[59]  The court should consider the evidence "in the light most favorable to the prevailing party, bearing in mind that '[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of

---

[56]*Security Ben. Life Ins. Corp. v. Fleming Cos., Inc.,* 908 P.2d 1315, 1323 (Kan. Ct. App. 1995), *rev. denied*, 259 Kan. 928 (1996).

[57]*Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1216–17 (10th Cir. 2008) (citing Fed. R. Civ. P. 61).

[58]*Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992) (citation omitted).

[59]*See, e.g.*, *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762–63 (10th Cir. 2009) (quotation omitted); *Snyder v. City of Moab*, 354 F.3d 1179, 1187–88 (10th Cir. 2003) (quotation omitted).

fact.'"[60]  The Court has reviewed the trial transcript and the evidence adduced at trial and, for

substantially the same reasons already discussed in the previous section, and viewing the

evidence in the light most favorable to plaintiffs, finds that the verdict was not clearly, decidedly,

or overwhelmingly against the weight of the evidence with respect to the liability of Dodson

Services, Inc. for breach of contract and breach of the duty of good faith and fair dealing and,

alternatively, unjust enrichment.  Moreover, to the extent the Court ruled in favor of Nion, LLC

and Dodson, Sr. as a matter of law, it need not address these claims further.

Defendants also argue that the Court's instructions on alter ego liability and liability of

Nion, LLC for breach of contract were inappropriate and appear to have confused the jury.

Although the Court ruled in favor of Nion, LLC and Dodson, Sr. as a matter of law on these

claims, it will briefly address this issue.  When the adequacy of a jury instruction is challenged,

"[the court] consider[s] all the jury heard, and from the standpoint of the jury, decide[s] not

whether the charge was faultless in every particular, but whether the jury was misled in any way

and whether it had an understanding of the issues and its duties to determine these issues."[61]

"Unless objection to a faulty jury instruction is made before the jury retires, error may not be

found later."[62]  Upon reviewing the record, the Court fails to find a proper objection to the jury

instructions identified by defendants.  Instead, counsel for defendant stated that he had no

objection to the form of the instructions, just their basis, as there were pending Rule 50(a)

---

[60]*Snyder*, 354 F.3d at 1187–88 (quoting *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir.2000)) (citation omitted); *see also Ellsworth v. Tuttle*, 148 F. App'x 653, 669-70, (10th Cir. 2005); *Acker v. Burlington N. & Santa Fe Ry. Co.*, 388 F. Supp. 2d 1299, 1301 (D. Kan. 2005).

[61]*Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1274 (10th Cir. 2006) (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1454 (10th Cir. 1997)).

[62]Fed. R. Civ. P. 51.

motions on both the alter ego claim against Dodson, Sr. and breach of contract claim against Nion, LLC.  Moreover, defendants do not explain how either instruction was "confusing or misleading."  A new trial is not justified on these grounds.

Finally, defendants argue the jury's award of $62,000 on plaintiffs' claim for interest on the funds used to pay for the Boeing 727 was improper, inasmuch as this claim had never previously been made before trial.  To the extent the Court ruled in favor of Dodson Services, Inc. on these damages as a matter of law, it need not address this issue further.  Accordingly, defendants' motion for new trial is denied.

## IV.  Motion for Costs, Attorney's Fees and Prejudgment Interest

### A.  Costs

Rule 54(d)(1) of Fed. R. Civ. P. provides in relevant part that costs other than attorney's fees shall be awarded as a matter of course to the prevailing party unless the court otherwise directs.  Plaintiffs ask the Court to award costs estimated at $4000 to $5000, "subject to the Court's *in camera* inspection of detailed accounting figures and invoices."[63]  Plaintiffs must follow the local rule for filing a bill of costs.[64]  That rule provides as follows:

> The party entitled to recover costs shall file a bill of costs on a form provided by the clerk within 30 days (a) after the expiration of time allowed for appeal of a final judgment or decree, or (b) after receipt by the clerk of an order terminating the action on appeal.  The clerk's action may be reviewed by the court if a motion to retax the costs is filed within five days after taxation by the clerk.  The failure of a prevailing party to timely file a bill of costs shall constitute a waiver of any claim for costs.[65]

---

[63](Doc. 146.)

[64]D. Kan. Rule 54.1(a).

[65]*Id.*

Moreover, plaintiffs' motion is premature to the extent that the time allowed for appeal of the final judgment is tolled due to defendants' timely filing of post-trial motions.[66]  Plaintiff's motion for costs is therefore denied without prejudice for proper submission at the proper time.

### B.      Attorney's Fees

Plaintiffs move for attorney's fees under Fed. R. Civ. P. 54(d)(2) in connection with the claims on which they prevailed.  Defendants respond that plaintiffs have failed to comply with the local rule requiring a moving party to provide the court with a written statement that the parties have consulted and have been unable to reach an agreement with regard to the fee award.[67]  That rule applies to a motion to award statutory attorney's fees, however, and does not apply to this case, where plaintiffs cite no statutory authority for the Court to award fees, and instead, request the Court to exercise its equitable powers to award fees because defendants acted in bad faith.

Federal courts, in the exercise of their equitable powers, may award attorney's fees when the interests of justice so require.[68]  Generally, under the so-called American Rule, parties must bear the costs of their own attorney's fees.  Nonetheless, the Supreme Court has recognized certain exceptions to the American Rule.[69]  One such exception allows courts to assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[70] This exception "derives from the inherent power of the federal courts to sanction conduct that

---

[66]Fed. R. App. P. 4(a)(4).

[67]D. Kan. Rule 54.2.

[68]*Hall v. Cole*, 412 U.S. 1, 4-5 (1973).

[69]*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

[70]*Id*. at 45-46 (quotation and citation omitted).

abuses the judicial process."[71]  Fees awarded under the bad faith exception are punitive in nature and are designed to punish the abuse of judicial process.[72]  The Tenth Circuit has defined three forms of bad faith conduct, one of which is not a basis for fee-shifting (bad faith in the acts giving rise to the substantive claim) and two that may justify a fee award under the bad faith exception to the American Rule (bad faith occurring during the course of litigation that is undisputably abusive of the judicial process or where a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense, that constitutes bad faith which is grounds for an award of attorney's fees).[73]

In this case, plaintiffs have not established that defendants raised a frivolous defense, acted vexatiously, were motivated by bad faith in defending the lawsuit, or otherwise unreasonably defended the case.[74]  On this record, and given the Court's rulings on various pre- and post-trial issues, the Court could as justifiably find that plaintiffs brought unfounded claims wantonly or for oppressive reasons.  Several of plaintiffs' allegations involve alleged bad conduct outside of litigation, which is not a basis for a bad faith award.  Moreover, plaintiffs' complaints about the scheduling of depositions in 2008 were never raised prior to this time.  The Court cannot find that defendants merit punishment for the abuse of judicial process and therefore denies plaintiffs' motion.

---

[71] *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997).

[72] *Id.* (quotations and citations omitted).

[73] *Id.*

[74] *See Mellon v. Cessna Aircraft Co.*, 64 F. Supp. 2d 1061, 1065 (D. Kan. 1999) (declining to award fees on the basis of bad faith in breach of contract lawsuit).

26

## C.    Prejudgment Interest

As discussed above, the Court has granted defendants judgment as a matter of law on plaintiffs' claim for interest on the $300,000 loan obtained by Ireland to purchase the Boeing 727.  The Court now addresses plaintiffs' claim for prejudgment interest on its liquidated claims. Plaintiff seeks prejudgment interest on its damages for breach of contract in the amount of $421,500.00 under K.S.A. § 16-201, which provides that "creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it comes due."  Defendants oppose plaintiffs' request for prejudgment interest on the ground that the damages awarded by the jury are not liquidated.  Alternatively, defendants argue that, should the Court elect to award prejudgment interest, it should be based on the federal judgment interest rate and not the Kansas interest rate.

The general rule of law in Kansas is that prejudgment interest is allowable on liquidated claims.[75]  "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation."[76]  The fact that a good faith controversy exists as to whether the defendant is liable for the money does not preclude a grant of prejudgment interest.[77]  Prejudgment interest "compensates the injured party 'for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment.'"[78]  The award of prejudgment interest under

---

[75]*Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir. 1993); K.S.A. § 16-201.

[76]*Kilner v. State Farm Mut. Auto Ins. Co.*, 847 P.2d 1292, 1300 (Kan. 1993).

[77]*Crawford v. Prudential Ins. Co.*, 783 P.2d 900, 909-10 (Kan. 1989).

[78]*Swift-Eckrich, Inc. v. Advantage Sys., Inc.*, 55 F. Supp. 2d 1280, 1289 (D. Kan. 1999) (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988)).

K.S.A. § 16-201 is a matter of judicial discretion subject to being overturned only when there is an abuse of discretion.[79]

In this case, the jury awarded plaintiffs damages for the breach of contract in the fixed amount of damages they were entitled to receive for the payments made for the Boeing 727, the Cessnas, and the radio equipment. Defendants argue that the amounts due plaintiffs were not ascertainable in light of defendants' contention that at least $150,000 was non-refundable and plaintiffs bore responsibility for reimbursing defendants for service work on the aircraft. However, "liquidated damages do not become unliquidated simply because a counterclaim or setoff reduce the amount of the final award."[80] The amounts paid by plaintiffs to defendants have never been in dispute. It is irrelevant that liability was disputed, as long as the amount of damages was certain.[81] Accordingly, the Court finds that plaintiffs' damages were liquidated.

The next question is the date when prejudgment interest on the contract damages should commence. "When prejudgment interest should commence is a matter to be determined by the trial court in the exercise of sound discretion, upon consideration of all the attendant facts and equities."[82] Plaintiffs assert that prejudgment interest should accrue starting from the date of Ireland's final letter of demand for refund on May 25, 2007. Defendants do not address this issue. The Court agrees with plaintiffs that May 25, 2007 is the date when prejudgment interest should commence.

_____

[79]*See Green Constr. Co.*, 1 F.3d at 1010.

[80]*Hatch & Kirk Power Servs. Corp. v. City of Girard*, No. 95-1155-DES, 1999 WL 99307, at *1 (D. Kan. Jan. 19, 1999).

[81]*Fidelity & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 215 F. Supp. 2d 1171, 1194-95 (D. Kan. 2002) (citation omitted).

[82]*Fidelity & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 216 F. Supp. 2d 1240, 1243 (D. Kan. 2002) (quoting *Mitchelson v. Travelers Ins. Co.*, 629 P.2d 143, 148 (1981)).

The final component of the prejudgment interest calculation is the rate. Prejudgment interest in a diversity case is a matter of state law.[83] Under Kansas law, prejudgment interest is allowable at the rate of ten percent per annum.[84] The case cited by defendants in support of their argument that the federal judgment interest rate is inapposite, as the parties in that case agreed to that rate of interest.[85] Thus, the Court awards plaintiffs prejudgment interest at the rate of ten percent from and after May 25, 2007.[86]

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Renewed Motion for Judgment as a Matter of Law (Doc. 138) is GRANTED with respect to the alter ego verdict against Dodson, Sr., the award of $62,000 interest on the loan obtained to purchase the Boeing 727, the $100,000 breach of contract claim against Nion, LLC, and the unjust enrichment claim against Dodson Services, Inc.; and DENIED with respect to the breach of contract and breach of good faith and fair dealing claims against Dodson Services, Inc.;

**IT IS FURTHER ORDERED** that defendants' Motion for New Trial (Doc. 140) is DENIED;

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Costs, Attorney's Fees and Prejudgment Interest (Doc. 146) is DENIED with respect to costs and attorney's fees, and GRANTED with respect to prejudgment interest.

**IT IS SO ORDERED.**

---

[83]*Macsenti v. Becker*, 237 F.3d 1223, 1245 (10th Cir. 2001).

[84]K.S.A. § 16-201.

[85]*Aaron v. City of Wichita, Kan.*, 822 F. Supp. 683, 685 (D. Kan. 1993).

[86]Prejudgment interest shall run until the date of the original Judgment entered May 12, 2009 (Doc. 137), rather than the Amended Judgment entered in accordance with this Order.

Dated: March 26, 2010

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE